UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Civil Action Number:

ANDRES GOMEZ,

    *Plaintiff,*

v.

HOOTERS OF AMERICA, LLC,

    Defendant

---

# COMPLAINT

---

    COMES NOW Plaintiff Andres Gomez, by and through his undersigned counsel, hereby files this Complaint and sues Defendant Hooters of America, LLC for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

## INTRODUCTORY STATEMENT

    1.    Plaintiff Andres Gomez brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Hooters of America, LLC's websites: www.hooters.com, www.hootersgear.com, and www.giftcards.hooters.com (collectively referred to herein as "websites"). These websites are an extension of Hooters of America, LLC's restaurants located throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land for over twenty-six years.

2. Companies operating on internet twenty years (20) after consumers starting using the internet to better lives, business and governments have to make decisions on whether to be inclusive, or to exclude people.

3. When the owners and operators of a website do not take the steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[1], they are not only disrespecting the disabled community, but they are actively excluding them from their business (a place of public accommodation), which in fact segregates the disabled into being non-participants, ie: second-class citizens.

4. When websites are not fully accessible to all, it's essentially a bad business practice, a detriment to theirs stakeholders, the disabled, and society.

5. In a world where there are an increasing number of low vision and blind individuals whose population is expected to double by 2050, it is essential that low vision and blind individuals are not excluded from society and segregated in area of web commerce.

6. This case arises out the fact that Defendant Hooters of America, LLC has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and accessing the Defendant's websites www.hooters.com, www.hootersgear.com, and www.giftcards.hooters.com.

7. Defendant Hooters of America, LLC (also referenced as "Defendant") owns and operates places of public accommodation which are a chain of restaurants

---

[1] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

under the brand name "Hooters." The Hooters restaurant menu includes chicken wings, burgers, sandwiches, salads, soups, steaks, seafood entrees, appetizers, and deserts. In addition, the Hooters restaurants have a merchandise section which offers sale to the general public Hooters-themed calendars, T-shirts, sweatshirts, and various souvenirs and knick-knacks. Heretofore, referenced as "Hooters food," and/or "Hooters brand merchandise."

8. The Defendant offers an adjunct website www.Hooters.com ("website") which is directly connected to its Hooters restaurants since the website provides a site locator to the Defendant's Hooters physical restaurant locations (places of public accommodation). Thus, www.Hooters.com ("website") has a true nexus to the Defendant's Hooters restaurants.

9. This is an action to put an end to civil rights violations committed by Defendant against individuals with disabilities who are visually impaired and who cannot access and comprehend the websites that operate therein without the aid of assistive technology.

**JURISDICTION & VENUE**

10. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, and 28 C.F.R. § 36.201.

11. This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to view Hooters' food menu as well as nutritional information, and to purchase Hooters' brand name merchandise online.

12. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant resides in this District, the Defendant transacts business in this District, and the acts constituting the violation of the ADA occurred in this District.

13. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Andres Gomez**

14. Plaintiff Andres Gomez ("Plaintiff Gomez") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

15. Plaintiff Gomez suffers from what constitutes a "qualified disability" under the ADA.  Plaintiff Gomez is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance. The Plaintiff's disability is defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h).

**Hooters of America, LLC**

16. Defendant Hooters of America, LLC (also referenced as Defendant) is the owner, operator, and franchisor of a chain of restaurants under the brand name "Hooters."

16. Defendant Hooters of America, LLC is a privately owned company which owns and franchises its Hooters restaurant concept.  As such, the Defendant is the owner or franchiser of more than 400 Hooters brand restaurants worldwide. The company is best known for its wait staff, also referred to "Hooters Girls" which are mainly attractive

young women that wear revealing outfits as part of the company's image. In 2010, Hooters reported revenue of approximately $1 billion USD.

17. In addition to viewing the Hooters food menu and locating Hooters restaurants nationwide and in the state of Florida, the Defendant's www.Hooters.com website provides a hyperlink to its www.hootersgear.com website, which provides consumers the ability to purchase online Hooters branded merchandise such as their famous calendars, clothing (such as Hooters signature T-shirts and shorts), and souvenirs (such as mugs and cups, key chains, and Hooters-themed golf accessories).

18. The www.Hooters.com website also provides a hyperlink to www.giftcards.hooters.com where the general public can purchase Hooters gift cards for use through the Hooters www.hootersgear.com website and at any Hooters restaurant.

19. Defendant Hooters of America, LLC is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

## FACTS

20. The Defendant is defined as a "public accommodation" because it is an entity which owns and operates a chain of restaurants under the brand name "Hooters," each of which is a "Place of Public Accommodation" which is defined as "[A] restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2). Each of the Defendant's Hooters restaurants are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(B) and 28 C.F.R. Part 36. The Defendant's Hooters restaurants are also referenced throughout as "place(s) of public accommodation," "Hooters restaurants."

5

21. Because the Defendant's Hooters restaurants also sells Hooters brand merchandise to the general public, the Defendant also meets the definition of a "public accommodation" defined as "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E).

22. The Defendant's website www.hooters.com ("website") is offered to provide the general public information including but not limited to information on the various locations of the Defendant's Hooters restaurants throughout the United States and within the state of Florida.

23. Defendant owns, operates, and/or franchises four hundred thirty Hooters restaurants in the United States, ten of which are located in South Florida. The Defendant's website www.hooters.com services the various Hooters restaurant locations represented by its physical sales locations by providing information on each of the Hooters restaurant locations.

24. Since the Defendant's website allows the general public the ability to locate one of the many Hooters restaurant locations, the website is an extension of the physical Hooters restaurants. Therefore, the website has a direct nexus between the website and the Defendant's Hooters restaurants, hence the website is also characterized as a place of public accommodation; 42 U.S.C. § 12181(7)(B) and § 12181(7)(E).

25. The website also provides the general public the ability to purchase Hooters brand merchandise and gift cards via hyperlinks (located through the "Shop" tab) which redirects users to the websites called www.hootersgear.com and www.giftcards.hooters.com. As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(E) and must comply with the

ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public. As such, the Defendant has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[2]

26. Plaintiff Gomez is a customer who is interested in dining at Miami-based Hooters restaurants, as can be located through the Defendant's website www.hooters.com.

27. Plaintiff Gomez is a customer who is also interested in purchasing Hooters brand merchandise which is offered through both the Defendant's Hooters restaurants and the websites: www.hootersgear.com, and www.giftcards.hooters.com.

28. The opportunity to preview Hooters food menu selection and nutritional information, purchase Hooters brand merchandise, and locate Hooters restaurant locations, are all important accommodation that the Plaintiff enjoys, because traveling outside the home as a blind individual is a difficult and frightening experience.

29. Plaintiff Gomez frequently utilizes the internet. In order to comprehend information available on the internet and access/comprehend websites, Plaintiff Gomez uses commercially available screen reader software to interface with the various websites.

30. In order to comprehend the Defendant's website and to become informed of the Defendant's Hooters food and Hooters brand merchandise (which other members of the general public may order online), Plaintiff Gomez must use screen reader software.

---

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

31. Buying and ordering Hooters brand merchandise and having those purchases delivered to one's home is a highly sought after accommodation that helps improve the lives of vision impaired people such as the Plaintiff (and thousands of others like him), and helps them integrate and participate in society.

32. Like most of us, Plaintiff Gomez accesses several websites at a time to compare foods and prices. When shopping online, Plaintiff Gomez may look at several dozen websites to compare features, styles and prices. When viewing restaurants online, Plaintiff Gomez may look at several dozen websites to compare menus, location, and prices and view nutritional information.

33. Plaintiff Gomez is customer of Hooters restaurants. During June 2016, the Plaintiff attempted on several occasions to utilize the Defendant's www.hooters.com website to browse through the food/menu selection to educate himself as to the Hooters food nutritional information. Additionally, the Defendant attempted on several occasions to browse www.hootersgear.com to educate himself as to Hooters brand merchandise.

34. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

35. However, the Defendant's websites did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's websites to permit access for visually impaired through other means.

36. Plaintiff Gomez attempted to locate any *Accessibility Notice* or any information relating to the websites' future accessibility plans or information regarding

8

contacting the Defendant to alert the Defendant to the inaccessibility of its websites, but was unable to do so, because no such link or notice was provided[3].

37. The fact that Plaintiff Gomez could not interface with the Defendant's websites left him feeling as if another door had been slammed in his face, as he is/was unable to participate in the ability to view the Hooters restaurant information at www.hooters.com or to participate in the shopping experience online at the www.hootersgear.com website as experienced by the general public, 26 years after the Title III of the ADA was enacted and which promised to remove such barriers.

38. Plaintiff Gomez continues to desire to patronize the Defendant's websites, but is unable to do so as he is unable to utilize the Defendant's websites, thus he will continue to suffer irreparable injury from the Defendant's intentional acts, omissions, policies, and practices set forth herein unless enjoined by this Court.

39. The Defendant's websites do/did not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

40. The Defendant's websites are/were not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

---

[3] Other online retailers have taken steps to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=1&
http://www.potbelly.com/Company/Accessibility.aspx

41. The Defendant's websites are/were so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

42. On information and belief, the Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the Hooters websites by individuals with disabilities.

43. On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its websites by individuals with disabilities.

44. On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its websites by individuals with disabilities.

45. On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its websites by individuals with disabilities.

46. On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

47. On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

48. On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

49. On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

50. On information and belief, the Defendant has not created and instituted on its websites a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

51. On information and belief, the Defendant's websites do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[4].

52. On information and belief, the Defendant does not have a Web Accessibility Policy.

53. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its websites.

54. On information and belief, the Defendant has not disclosed to the public any intended changes, audits, or involved lawsuits to correct the inaccessibility of their websites vis-a-vis disabled individuals who are visually impaired who want the safety and privacy of purchasing products online from their homes like other Americans.

55. Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

---

[4] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

56. Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

57. For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society with safety and in dealing with terms of their disability.

58. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website where they have a direct connection.

59. On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its websites to become informed of Hooters restaurant location, the Hooters food menu, and Hooters brand merchandise available for purchase online and at Hooters restaurant locations.

60. On information and belief, the Defendant is aware of need to provide full access to all visitors of the Website.[5]

61. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

62. Such barriers result in punishment and isolation of blind and low vision from the rest of society.

---

[5] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)

63. Thus, the Defendant has refused to make its websites accessible to individuals with disabilities who are visually impaired.

64. According to Statistic Brain Research Institute[6], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as www.hootersgear.com have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

65. According to the National Federation for the Blind[7], there are 6,670,300 Americans with visual disabilities.

66. The National Federation for the Blind has also reported that there are over half a million people with visual disabilities living within the state of Florida.

67. The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as the Plaintiff. The Defendant is operating in violation of Plaintiff Gomez's rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

68. Plaintiff Gomez has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

---

[6] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/
[7] Statistics for 2012, see http://www.NFB.org/blindness-statistics

69. Plaintiff Gomez and others will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

70. Notice to the Defendants is not required as a result of the Defendant's failure to cure the violations. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§s 2201, 2202.

71. The Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

72. Plaintiff Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-71 above.

73. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[8].

74. As a result of the inaccessibility of the Defendant's websites and by the barriers to access in its websites (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to

---

[8] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

14

the general public on its websites (www.hooters.com, www.hootersgear.com, and www.giftcards.hooters.com), in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

75.     Pursuant to 42 U.S.C. §12181(7)(B), www.hooters.com (the Defendant's website) is a *place of public accommodation* under the ADA because it serves to augment its chain of Hooters restaurants by providing the general public information on the various locations of the Defendant's chain of Hooters restaurants and educate the general public as to the line of Hooters food.

76.     Pursuant to 42 U.S.C. §12181(7)(E), www.hootersgear.com, and www.giftcards.hooters.com (the Defendant's websites) is a *place of public accommodation* under the ADA because it serves to augment its chain of Hooters restaurants by providing the general public information on the various locations of the Defendant's chain of Hooters restaurants (for purchase of Hooters brand merchandise), to educate the general public as to the line of Hooters brand merchandise public, and to provide the general public with the ability to purchase Hooters brand merchandise online and to purchase gift cards to use on its website and/or in its Hooters restaurants.

**77.**     As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's websites are/were not in compliance with the ADA. Plaintiff Gomez has suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

78.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and

*Programing Alert Error Types* ("PATs"), which are prone to making each website inaccessible.

79. A sampling review of just part of the Defendant's websites revealed that the websites are not functional for users who are visually impaired. The Defendant's websites contains several types of PETs (easily identifiable and correctable), which occur throughout each website such as:

   1) The language of the document is not identified,
   2) Image alternative text is not present, and
   3) A form control does not have a corresponding label.

80. Further, the Defendant's websites contain various types of PATs (prone to making the website inaccessible), which occur throughout each website, such as:

   1) Alternative text is likely insufficient or contains extraneous information,
   2) An event handler is present that may not be accessible,
   3) A heading level is skipped,
   4) Flash content is present,
   5) Adjacent links go to the same URL,
   6) A link contains no text, and
   7) Alternative text is likely insufficient or contains extraneous information.

81. More violations may be present on other pages of each website, and they will be determined and proven through the discovery process.

82. Further, the Defendant's websites do/did not offer include the universal symbol for the disabled[11] which would permit disabled individuals to access each website's accessibility information and accessibility facts.

---

[11] , or HTML "Accessibility" link for those individuals who are visually impaired

83. Therefore, due to the Plaintiff's disability and the Defendant's failure to have its websites adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the Defendant's websites.

84. The Defendant has violated the ADA (and continues to violate the ADA) by denying access to www.hooters.com, www.giftcards.hooters.com, and www.hootersgear.com to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within each of the websites are ongoing.

85. As a result of the Defendant's inadequate development and administration of www.hooters.com, www.hootersgear.com, and www.giftcards.hooters.com, Plaintiff Gomez is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

86. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Gomez injunctive relief; including an order to:

    a) Require Defendant Hooters of America, LLC to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of each of its websites to a statement as to Hooters of America, LLC's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its websites, and

    b) Require Defendant Hooters of America, LLC to cease and desist discriminatory practices and if necessary to cease and desist operations of the websites known as www.hooters.com, www.hootersgear.com, and

17

        www.giftcards.hooters.com until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

87. Plaintiff Gomez has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff Gomez is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Hooters of America, LLC.

WHEREFORE, Plaintiff Andres Gomez hereby demands judgment against Defendant Hooters of America, LLC and request the following injunctive and declaratory relief:

    a) The Court to declare the Terms of Use as delineated on the Defendant's websites www.hooters.com, www.giftcards.hooters.com and www.hootersgear.com ("websites") null and void and rescinded and not applicable to the Plaintiff, due to the inaccessibility of the websites for visually impaired individuals such as the Plaintiff who have no means to comprehend said Terms of Use;

    b) The Court to declare that the privacy rights of the Plaintiff have been violated by the unwarranted and unauthorized software and analytics that have been placed on Plaintiff's computer without his consent;

    c) The Court issue a declaratory judgment that Defendant Hooters of America, LLC has violated the Plaintiff's rights as guaranteed by the ADA;

    d) The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant Hooters of America, LLC from operating

        its websites www.hooters.com, www.giftcards.hooters.com and www.hootersgear.com ("websites") without adequate accommodation for the visually impaired community;

e) The Court enter an Order requiring Defendant Hooters of America, LLC to update website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;

f) The Court enter an Order requiring Defendant Hooters of America, LLC to clearly display the universal disabled logo[12] within its website, wherein the logo would lead to a page which would state Hooters of America, LLC's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the Defendants websites;

g) The Court enter an order requiring Defendant Hooters of America, LLC to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

h) The Court enter an Order directing Defendant Hooters of America, LLC to evaluate its policies, practices and procedures toward persons with

---

[12] 

        disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to its websites.

i)     The Court enter an Order directing Defendant Hooters of America, LLC to establish a policy of web accessibility and accessibility features for its websites.

j)     The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff; and

k)     That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 22nd day of August, 2016.

                              Respectfully submitted,

                                    *s/Scott Dinin*
                                  Scott R. Dinin, Esq.
                                  Scott R. Dinin, P.A.
                                  4200 NW 7th Avenue
                                  Miami, Florida 33127
                                  Tel: (786) 431-1333
                                  inbox@dininlaw.com
                                  *Counsel for Plaintiff*